953 F.2d 1387
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jonathan MARSH, a minor, by and through his Guardian Ad
Litem, Sharon MARSH, Plaintiff-Appellant,
v.
ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK, Defendant-Appellee.
 No. 90-56143.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1991.
Decided Jan. 22, 1992.
 
 Before BEEZER, CYNTHIA HOLCOMB, HALL and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Jonathan Marsh appeals from the district court's grant of summary judgment to Appellee Allstate in Marsh's suit to obtain continuing medical benefits under a policy terminated by Allstate. The district court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 3
 * In Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir.1990), this court held that the interpretation of ERISA insurance policies is governed by a "uniform federal common law." In developing a federal common law to govern ERISA suits, federal courts should borrow "from state law where appropriate, and [be] guided by the policies expressed in ERISA and other federal labor laws." Scott v. Gulf Oil Corp., 754 F.2d 1499, 1502 (9th Cir.1985).
 
 II
 
 4
 This court reviews a district court's grant of summary judgment de novo. International Brotherhood of Electrical Workers, Local 47 v. Southern Cal. Edison Co., 880 F.2d 104, 105 (9th Cir.1989). In doing so, it must determine whether, viewing the evidence in the light most favorable to the party against whom summary judgment has been granted, there is any issue of material fact and whether the moving party is entitled to judgment as a matter of law. Arizona Laborers Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co., 753 F.2d 1513, 1515 (9th Cir.1985). "When the meaning of an agreement is ambiguous on its face and contrary inferences as to intent are possible, an issue of material fact exists for which summary judgment ordinarily is inappropriate." International Brotherhood of Electrical Workers, 880 F.2d at 107 (citing Arizona Laborers, 753 F.2d at 1517-18).
 
 III
 
 5
 In determining whether or not an insurance contract is ambiguous, this court will interpret its terms " 'in an ordinary and popular sense as would a [person] of average intelligence and experience.' " Evans, 916 F.2d at 1441 (quoting Allstate Insurance Co. v. Ellison, 757 F.2d 1042, 1044 (9th Cir.1985)). The court should "examine[ ] the contract as a whole and if, on the face of the contract, two reasonable and fair interpretations are possible, an ambiguity exists." Evanston Insurance Company v. Fred A. Tucker & Co. Inc., 872 F.2d 278, 279 (9th Cir.1979). The court will " 'not create ambiguity where none exists.' " Evans, 916 F.2d at 1441. And if " 'a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.' " Id.
 
 
 6
 There is no doubt that there is a reasonable interpretation of the Policy that favors Allstate. The Policy includes a broad description of the expenses it covers that cannot be interpreted to include expenses incurred after the Policy is terminated. It states: "The Medical Benefit is paid for Eligible Expense [sic] incurred for an Injury or Sickness while insured." And it defines an "Eligible Expense" as an expense "incurred for an Injury or Sickness while insured." Both provisions plainly refer to expenses incurred while insured, not expenses arising from a sickness incurred while insured. This reading is supported by the clause providing that an " 'Expense' is deemed incurred on the date the service or supply is furnished." If the Policy covered expenses incurred after termination, there would be no reason to specify the date on which an expense is incurred.
 
 
 7
 This interpretation is consistent with the Policy's "EXTENSION OF BENEFITS" provision. That provision sets forth limited circumstances under which a person may obtain benefits under the Policy even though the policy has been terminated. It states that Allstate will pay the Medical Benefit after the person's insurance ends if the person is totally disabled at the time the Policy is terminated and at the time the expense is incurred, the expense is directly related to the disability, and the expense is incurred within one year of the termination. If, as Marsh claims, the Policy vested benefits, there would be no reason to include the "EXTENSION" provision because every expense it covers would be covered by vesting. In other words, the provision would be superfluous.
 
 
 8
 Considered together, these provisions would appear to preclude vesting. But Marsh points to another provision of the Policy that he claims vested his rights to benefits for any illness she contracted prior to the termination of the Policy. At the very least, he argues, this provisions cast doubt over those provisions of the Policy that preclude vesting, creating an ambiguity.
 
 
 9
 Marsh points to the provision in the section of the Policy entitled "TERMINATION OF INSURANCE." It states: "The end of insurance will not affect any claim made for a loss that took place while the insurance was in force." Marsh concludes that "loss" must refer to a sickness or injury that occurred while the policy was in effect. But Allstate responds that "loss" refers not to sickness but to "eligible expense." Read in isolation, "loss" could reasonably refer to either "sickness" or "expense"; the term is itself ambiguous. But precisely because of its ambiguity, it does not conflict with the provisions that preclude vesting. Read in light of the Policy's express limitation on the payment of medical benefits and the "EXTENDED COVERAGE" provision, the ambiguity disappears and it becomes clear that "loss" refers to "expense." Thus the "TERMINATION" provision does not conflict with other portions of the Policy and does not render the Policy ambiguous.
 
 IV
 
 10
 Finally, we conclude that nothing in the Policy implies that Marsh should receive the same benefits under the conversion policy as he did under the group policy. Marsh has pointed to nothing in the Policy that would have caused a reasonable person to draw such a conclusion. Nor has he offered any evidence that he held such a belief and relied on it.
 
 V
 
 11
 Because we conclude that the Policy unambiguously precludes the vesting of benefits, the decision of the district court is
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3