(234 P.3d 820)
No. 101,666

HERMAN M. TERNES, *Appellee*, v. JOSEPH P. GALICHIA, M.D., *Appellee*, and ACCIDENT RECOVERY TEAM, P.A. and JAMES A. CLINE, *Appellants*.

Opinion filed June 11, 2009.

*Christopher A. McElgunn*, of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, for appellants.

*Lisa A. McPherson* and *Marcia A. Wood*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee Joseph P. Galichia, M.D..

Before HILL, P.J., PIERRON, J., and BUKATY, S.J.

HILL, J.: We consider here a medical malpractice action. Herman M. Ternes dismissed his first lawsuit against Joseph P. Galichia, M.D., and then with another counsel refiled it about 4 months later. Ultimately, the district court dismissed his second lawsuit based on the 2-year statute of limitations. We reverse the district court's dismissal because Galichia never raised the affirmative defense of the statute of limitations during the 16 months he litigated the first lawsuit and also took clear, unequivocal steps, such as seeking a professional malpractice screening panel and participating in discovery, that constitute a waiver of that affirmative defense. We hold that once an affirmative defense is waived, it is gone and no longer available to the party waiving the defense.

*Ternes sues Galichia for malpractice.*

Dr. Galichia carried out a heart catheterization on Ternes on March 5, 2004. Afterwards, Ternes claimed Galichia negligently lacerated his left main artery, left anterior descending artery, and circumflex coronary artery. These injuries forced Ternes to undergo open heart surgery which resulted in acute renal failure and permanent renal injury.

Almost 2 years later—March 3, 2006—Ternes filed a medical negligence lawsuit against Galichia and an entity called The Galichia Medical Group, P.A. in Sedgwick County District Court. The record reveals service upon the professional association but no service on Galichia personally.

From the start of the lawsuit, Galichia was active. Galichia and his professional association were granted a 10-day extension to file an answer but never did file such a pleading. Counsel for Galichia entered their appearances in the lawsuit on November 28, 2006. Both parties asked the district court on June 28, 2006, to convene a medical malpractice screening panel. (It is not clear whether the screening panel actually met, but it was eventually dismissed.) Then, on January 2, 2008, Ternes dismissed his lawsuit. His attorneys on the first lawsuit were Accident Recovery Team, P.A. and James A. Cline.

A little more than 4 months after dismissing his lawsuit against Galichia, Ternes filed a second petition in Sedgwick County District Court, making the same medical negligence claims but with different lawyers. Later, in August 2008, Galichia moved to dismiss the new petition on the grounds that the statute of limitations barred the action.

Meanwhile, Ternes filed a legal malpractice lawsuit against the Accident Recovery Team, P.A. and Cline. He alleged his former counsel negligently failed to obtain service of process on Galichia in his first lawsuit and his medical negligence claim against Galichia was now time barred by the statute of limitations. Then, both the Recovery Team and Cline intervened in the second Ternes lawsuit against Galichia because they had learned Ternes planned not to oppose Galichia's motion to dismiss based on the statute of limitations.

Finally, in November 2008, the district court granted Galichia's dismissal motion. The court specifically found that Ternes' second lawsuit against Galichia was untimely and Galichia was not prevented from raising the affirmative defense of statute of limitations. The intervenors bring this appeal. In turn, Galichia argues the intervenors have no standing to appeal and therefore we have no jurisdiction to consider the case. He also contends the district court properly dismissed the second lawsuit due to the statute of limitations. We will address the standing to appeal issue first.

*The district court properly allowed the attorneys to intervene; therefore, we have jurisdiction to decide the appeal.*

Because Ternes has folded his tents and withdrawn from the field of battle by not opposing Galichia's motion to dismiss, Galichia contends his former counsel, the Recovery Team and Cline, cannot intervene since there is no lawsuit remaining in which they can intervene. In other words, Ternes' acquiescence in the judgment of dismissal precludes the attorneys' appeal, in Galichia's view. We do not agree. These facts illustrate the precise reason for intervention.

Our law permits parties to intervene in a pending lawsuit when they have an interest in the property or the transaction which is

the subject of the action. See K.S.A. 60-224(a)(2). Courts have specifically allowed parties to intervene in a lawsuit when disposition of the action may substantially impair or impede the intervenor's ability to protect that interest unless the intervenor's interest is adequately represented by existing parties. Here, of course, central to Ternes' claims against his former counsel is his contention that his action against Galichia is time barred. Therefore, Ternes has no reason to oppose Galichia's motion to dismiss and certainly Galichia was using the motion as his first line of defense in the malpractice action. Clearly, no party in the lawsuit represented the interests of the Recovery Team and Cline. In our view, the court properly allowed the lawyers to enter the case as interested parties. Several cases support our conclusion.

In *Pickens v. Allstate Ins. Co.*, 17 Kan. App. 2d 670, 674-75, 843 P.2d 273 (1992), *rev. denied* 252 Kan. 1093 (1993), the court decided an insurer could intervene to protect its interests in a policyholder's lawsuit against an uninsured motorist if the insurer's rights are not adequately represented by the parties, because the insurer has a financial stake in the outcome. Obviously, the Recovery Team and Cline have a financial stake in Ternes' second lawsuit that is comparable to the insurer's in *Pickens*.

Also, we are told in *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 11, 687 P.2d 603 (1984), that the factors found in the statute that permits intervention, K.S.A. 60-224(a), should be liberally construed in favor of intervention. Those factors are: (1) timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interests. This is especially true when it is necessary to protect some right which cannot otherwise be protected including the right to appeal. Without intervention of the lawyers in this case there never could have been an appellate review of the order dismissing Ternes' lawsuit against Galichia on the grounds of the statute of limitations. Ternes' acquiescence in the judgment precluded the appeal without intervention. Also, we know that intervenors can appeal even if the original parties to a lawsuit do not.

To demonstrate this point, we turn to *Hukle v. City of Kansas City*, 212 Kan. 627, 512 P.2d 457 (1973). In *Hukle*, a landowner

sought a zoning change in order to erect a townhouse complex. The city resisted, but finally the district court ruled the city's refusal was arbitrary and unreasonable. When a group of neighboring landowners tried to intervene in the lawsuit, the district court refused their intervention motion. Next, the city moved to dismiss its appeal of the district court's zoning ruling. The landowners tried to intervene a second time, contending the city no longer represented their interests in the zoning dispute. Again, the court denied their intervention motion. The landowners appealed. The Supreme Court, in overturning the district court's order, discussed the doctrine of merger when intervention occurs:

" 'A person who intervenes in a pending action becomes a party thereto and his action is merged with the main action. Thus intervention, it is said, is the grafting of one action on another, the trying of the combined issues as one trial, and the determination of them by one judgment . . . .' [Citation omitted.]" 212 Kan. at 632.

The court then explained an intervenor takes on the character of an original party:

" 'Intervention presupposes the pendency of a suit in a court of competent jurisdiction, and one who becomes a party thereto, implicitly, if not expressly accepts the proceedings as he finds them at the time of intervention; the intervener is, for all intents and purposes, an original party. . . . The intervener is as fully bound by the record and as fully entitled to avail himself of it as if he had been an original party thereto.' [Citation omitted.]" 212 Kan. at 632.

Thus, the Supreme Court held the district court erred in denying the landowner's intervention motion and proceeded to determine the merits of the zoning appeal. In the same way, we should consider the merits of this appeal.

Correspondingly, the Recovery Team and Cline were allowed to intervene because no one in the lawsuit represented their interests. Clearly, they had a financial and professional stake in how the district court ruled on Galichia's statute of limitations motion. When it was granted, as intervenors, they became as if they were original parties and could appeal the dismissal order.

We find no error in the district court allowing the lawyers to intervene. As intervenors, they have standing to bring this appeal. We turn now to the merits of the matter.

*Because Galichia effectively waived the affirmative defense of the statute of limitations in the first lawsuit, the court improperly dismissed the second.*

The intervenors, Recovery Team and Cline, contend Galichia, through his participation in the first lawsuit as well as not raising the issue at all, has waived the defense of the statute of limitations. Galichia denies any waiver and insists the saving statute, K.S.A. 60-518, cannot save Ternes' second lawsuit against him because it was filed after the expiration of the period when such claims can be filed. Before we address the issue, we must review some fundamental points of law.

Basically, a civil action is commenced when the petition is filed in court if service of process is obtained within 90 days of that date. (The court can extend that time for 30 days for good cause.) See K.S.A. 60-203(a)(1). But, if there is no service within 90 days (or 120 where applicable), the action is deemed commenced on the day when process is served. K.S.A. 60-203(a)(2). An entry of appearance has the same legal effect as service of process. K.S.A. 60-203(c). In this context, Ternes was required to commence his lawsuit for medical negligence within 2 years. K.S.A. 60-513(a)(7). We must now look at the timeline of this case.

First, Galichia's medical negligence allegedly happened on March 5, 2004. This means the limitation period expired March 5, 2006. Ternes filed his first petition on March 3, 2006. This means Ternes had 90 days to obtain service on Galichia. He did serve the professional association, but Galichia was never served. We conclude Ternes' lawsuit was not commenced, within the meaning of the law, until June 26, 2006, when both parties asked the district court to convene a professional screening panel. We do not agree with the Recovery Team and Cline on this point. They argue the first lawsuit commenced on May 26, 2006, when Galichia asked for additional time to answer. But, *Lindenman v. Umscheid,* 255 Kan. 610, 631-32, 875 P.2d 964 (1994), holds that such requests are not an entry of appearance. See K.S.A. 60-203(c). Galichia's actual entry of appearance was filed on November 28, 2006. Obviously, the first lawsuit was commenced after the expiration of the statute of

limitations. But since we are dealing with a second lawsuit, we must also take into account the statute of repose.

The statute of repose applicable in this medical negligence cause of action is 4 years. Meaning Ternes had until March 5, 2008, to commence any lawsuit arising from Galichia's negligence. Ternes' second lawsuit was filed on May 23, 2008, after the expiration of the statute of repose. See K.S.A. 60-513(c). But we must also consider the nature of an affirmative defense.

Such defenses, according to K.S.A. 60-208(c), must be pled and proved by the defendant. In fact, unless the affirmative defense of statute of limitations is pled and proved, the court entertaining the matter should assume that a petition is timely commenced. See *King v. Pimental*, 20 Kan. App. 2d 579, 583, 890 P.2d 1217 (1995). But in the first lawsuit here, Galichia never filed an answer. However, that fact alone does not lead us to conclude Galichia waived his affirmative defense, because a statute of limitations can be raised in a K.S.A. 60-207(a) motion for judgment on the pleadings or at the trial on the merits. See K.S.A. 60-212(h)(2); *Woolums v. Simonsen*, 214 Kan. 722, 725-26, 522 P.2d 1321 (1974). Galichia's failure to raise the defense for the almost 16 months the first lawsuit was pending and the actions he took while it was pending are more telling in this regard. The major step toward waiver of the defense was asking for a screening panel.

Such screening panels can be requested in medical malpractice cases under K.S.A. 2009 Supp. 60-3502. Galichia joined Ternes in making a request for a panel on June 28, 2006. In fact, on September 27, 2006, Galichia designated Dr. Thomas Estep as his screening panel member. A party cannot convene a medical malpractice screening panel when the claim is time barred by the statute of limitations. See *Lawless v. Cedar Vale Regional Hosp.*, 252 Kan. 1064, 1065, 850 P.2d 795 (1993). A screening panel just considers whether the health care provider departed from the standard of care and injured the patient. See K.S.A. 2009 Supp. 60-3505(a). There was no reason for Galichia to join in a request for a screening panel if he intended to assert a statute of limitations defense. In addition to requesting a screening panel, Galichia took other steps that force us to conclude he waived his affirmative defense.

Following his request for a screening panel, Galichia joined in obtaining a stay order from the district court while the screening panel was working. Later, in July 2007, Galichia sought to dismiss the screening panel, not on the grounds of the statute of limitations but, instead, on the grounds that Ternes was not prosecuting the screening panel procedure in a timely manner. Then, in August 2007, Galichia asked for a discovery conference which was held in September of that year. At that conference, the court and the parties established a case schedule for discovery, disclosures, a pretrial conference, and trial. Later, in October 2007, Galichia served interrogatories and a request for production of documents on Ternes. At no time did Galichia mention the statute of limitations. To the contrary, his actions indicated a defense on the merits and both sides expended time and money accordingly. Actions can constitute a waiver of an affirmative defense.

Waiver is a voluntary and intentional relinquishment of a known right and the expression of an intention not to insist upon what the law affords. Such an intention may be inferred from conduct, and both knowledge and intent are essential elements, but knowledge may be actual or constructive. *Sultani v. Bungard,* 35 Kan. App. 2d 495, 498-500, 131 P.3d 1264 (2006). In *Sultani,* the court found the plaintiffs waived their right for a new trial about noneconomic damages when they declined to have the jury return to deliberate about noneconomic damages. They accepted the verdict, instead. By accepting the verdict of the jury, they waived any defect in the verdict.

In opposition to this, Galichia argues that even if he waived his affirmative defense of the statute of limitations, it would have no effect on this lawsuit because the saving statute, K.S.A. 60-518, is only effective if the original action is timely filed. And, of course, as we have previously noted, the first lawsuit was legally commenced after the limitation period had expired. Galichia cites a number of cases as support: *Comstock v. Joplin,* 31 Kan. App. 2d 410, 35 P.3d 1055, *rev. denied* 276 Kan. 967 (2003), *Smith v. Graham,* 282 Kan. 651, 664, 147 P.3d 859 (2006), *Clanton v. Estivo,* 26 Kan. App. 2d 340, 342, 988 P.2d 254 (1999), and *Handy v.*

*Reed*, 32 Kan. App. 2d 247, 254, 81 P.3d 450 (2003), *rev. denied* 277 Kan. 923 (2004).

However, none of these cases support Galichia's contention that K.S.A. 60-518 does not apply when a claim is not timely commenced but the defendant waives the statute of limitations as an affirmative defense. *Comstock* involves application of K.S.A. 60-518 where an individual filed the original lawsuit under a different name. See 31 Kan. App. 3d at 413. *Smith* involved the tolling effect of a medical screening panel and held that K.S.A. 60-518 does not save a second action filed *before* the original action is dismissed. See 282 Kan. at 652-53, 664. *Clanton* dealt with multiplicitous dismissals and refilings. See 26 Kan. App. 2d at 342. In *Handy*, the defendant was never properly served and never appeared before the original action was voluntarily dismissed. See 32 Kan. App. 2d at 249-50, 254. We must now turn to the saving statute.

If a lawsuit is terminated for any reason other than on the merits, and the plaintiff refiles the action within 6 months of the dismissal, the second lawsuit may proceed even if the time limit for the action has expired before the second lawsuit was filed. K.S.A. 60-518. Furthermore, Kansas law is clear that the saving statute, K.S.A. 60-518, applies to both the statute of limitations and its companion, the statute of repose. The case *See v. Hartley*, 257 Kan. 813, 822-23, 896 P.2d 1049 (1995), made it clear that the saving statute saved cases from the statute of repose as well as the statute of limitations. In *See*, the court dealt with an interlocutory appeal in a medical malpractice case. About a week before the 2-year statute of limitations expired, the plaintiff, See, asked the court to convene a screening panel. The court did so. About 9 months later the court decided the panel had been improperly constituted, set aside that panel's findings and conclusions, and convened a second panel. Two months later, the second panel reported its findings. Thereafter, See filed his first petition. About 5 months later, he dismissed that petition voluntarily and then within 6 months of the dismissal See filed his second petition which was admittedly filed outside the statute of limitations and the statute of repose. The court held, "[t]he repose provisions of 60-513(c) are not applicable to defeat the savings clause of 60-518 when the initial action was timely filed,

even though the second action is not filed until more than four years after the act which gave rise to the cause of action." 257 Kan. at 822. In our view then, since we hold the first lawsuit was timely commenced because Galichia waived the statute of limitations affirmative defense, the saving statute, K.S.A. 60-518, bars the dismissal of the second lawsuit for being untimely due to either the statute of limitations or the statute of repose.

We find a case from New Jersey persuasive. In *White v. Karlsson*, 354 N.J. Super. 284, 286-87, 292, 806 A.2d 843 (2002), the court reversed a grant of summary judgment to the defendant when the plaintiff filed his petition outside the statute of limitations because the defendant through his actions waived the defense. The court noted both parties had engaged in discovery and had expended both time and money. In fact, the defendant engaged in arbitration concerning the case but never raised the affirmative defense for a year.

That case is analogous to the facts here. Galichia's actions were inconsistent with a statute of limitations defense. His delay led to substantial discovery that misled and prejudiced Ternes. Once an affirmative defense is waived it is gone. We find no case law or statute that permits it to be "unwaived." The district court erred when it dismissed Ternes' second petition on these grounds.

Reversed and remanded.